UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 MAY 17  AM 10: 24

U S  DISTRICT...

MARY L. HARRINGTON,      )
                         )
    Plaintiff,           )
                         )
    vs.                  )      CV 00-BU-2642-E
                         )
CLEBURNE COUNTY BOARD    )      **ENTERED**
OF EDUCATION, et al.,    )
                         )      MAY 17 2001
    Defendants.          )

## MEMORANDUM OPINION

This case is presently pending before the Court on motion for summary judgment, filed by Defendants. (Doc. 13) Plaintiff sued Defendants, alleging that they had discriminated against her on the basis of her gender and her race, and retaliated against her for filing a charge of discrimination in May 1998 and for filing prior lawsuits and EEOC charges. She contends that she was denied a promotion to the position of Principal of Cleburne County High School. (Doc. 1, ¶ 17) She also contends that Defendants retaliated against

her by paying her a salary less than similarly situated administrators and by reducing her job duties.  (*Id.* ¶ 19).[1]

Based on its review of the parties submissions, the Court has determined that Defendants' motion for summary judgment is due to be granted and Plaintiff's claims are due to dismissed.

## I.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538  (1986).  Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A party seeking summary

---

[1]Plaintiff's complaint contains a § 1983 claim based on a violation of her First Amendment rights.  Such claim has apparently been abandoned by Plaintiff and the Court will not consider it.  *See* Doc. 18, pp. 31, 42-44.

judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553;  *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994).  In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II.   **STATEMENT OF FACTS**

Defendant Danny Mobley (hereinafter "Mobley") is a white male who is the Superintendent of the Cleburne County Board of Education ("Board of

Education").  The Board of Education has approximately 2500 students in seven schools.  The seven schools consist of two high schools, four elementary schools and one career technical school.  The Board employs approximately 180 certified employees and approximately 120 non-certified, support personnel.  Out of the 180 certified employees, only five are African-American.  Mobley did not hire any of these African-American, certified employees.  Out of the approximately 120 support personnel, only one is an African-American, Cecil Baker,  who is employed as the  custodian at Cleburne County High School (hereinafter "CCHS").  Mobley did not hire Cecil Baker.

Mobley has recommended an African-American female, Barbara Johnson for a Principal position; however, this recommendation by Mobley was made after Plaintiff's lawsuit was filed.

CCHS has approximately 730 students.  African-Americans comprise 6-7% of the student population at CCHS.  There are no African-American students at the County's other high school, Ranburne High School, Ranburne Elementary School, or Fruithurst Elementary School. At Cleburne Elementary School, there are approximately 490 students, with African-Americans comprising only between 4-6 % of the student population.  At Pleasant Grove

Elementary School, there are approximately 280 students, with African-Americans comprising between 3-4% of the student population.

There are no African-American teachers at Ranburne High School, Ranburne Elementary School, Fruithurst Elementary School, or Cleburne County Career Technical School. There is only one African-American teacher at Pleasant Grove Elementary School. At Cleburne Elementary School, there are two African-Americans employed as teachers, one of which had been made a Principal. At CCHS, there is one African-American teacher.

In April and May of 1998, the Board of Education was composed of five board members, who were all white and all but one was male.

Plaintiff was non-renewed at the end of the year when she would have first obtained tenure while a teacher at Cleburne Elementary School, and she filed a race discrimination lawsuit over this non-renewal. Plaintiff won her lawsuit of race discrimination and the Court ordered that she be re-instated. Later, in 1995, Plaintiff obtained her current position as an administrator as a result of a settlement agreement in another race discrimination lawsuit.

Of the approximately 180 to 190 certified employees, the higher percentage of the employees are female. Most of the teachers in the Cleburne County school system are females.

At the time of the employment decision in question, Plaintiff is the only African-American with a doctorate employed by the Board of Education.

When the Board has a job opening, the job vacancy notice is posted at the Board's Central Office and in every school in the system.  On some occasions, notices of vacancies are also advertised in local newspapers if there is not an adequate pool of applicants already on file.  These job vacancy notices are placed in newspapers that have distribution within the Heflin/Cleburne County area, including the *Cleburne News* and the *Anniston Star*.  While Mobley has been Superintendent, the Board has not posted job vacancy notices on the Internet.  Furthermore, Mobley has not used the Internet to check the applicant pool of available teachers created by the State of Alabama.  Since Mobley has been superintendent, the majority of the job positions for Assistant Principals and Principals have been filled by applicants on file in the Central Office, with only one individual being hired from outside the Cleburne County school system.  This individual was hired approximately two years ago to be the Assistant Principal at CCHS and he is a white male.

The notice for the job of Principal of CCHS was posted in April of 1998 and the interviews were held in April and May.  The selection decision was

made in May of 1998. At that time, there were no African-American Principals in any of the schools in the Cleburne County system.[2]

   All individuals who applied for the position of principal of CCHS in April and May 1998 were granted interviews with Mobley and the Board members. Superintendent Mobley and the Board members reviewed each of the applications and decided to give everyone an interview. Mobley is not aware of any written policy regarding selecting applicants for interviews or selecting an applicant to fill a vacancy. In screening the applicants, Mobley and the Board members review the qualifications of the applicant, whether the applicant was already an employee of the system, and sometimes they review the work experience of the applicant.

   The next step in the selection process is the interview. For a principal's position, the applicants are interviewed by all Board members and Mobley.

   All of the applicants for a principal's job are asked a standard set of questions, which have been drafted by past Superintendents and are updated by Mobley. Mobley does not check references for applicants he feels he "knows." In fact, if the individual already has an application on file, they are

_____

   [2]   The only African-American Assistant Principal ever was Jessie Montgomery, who received his position after filing a discrimination lawsuit.

not required to submit a new application for each new posting.  When a person comes in for an interview, Mobley asks the standard questions and Board members may ask follow-up questions for clarification.

During the interviews in April-May 1998, Mobley did not ask all of the standard questions to each of the applicants interviewed due to a thirty-minute time limit on each interview.  The Board members and Mobley do not use notes or scales for rating the applicant at the end of the interviews.  There is a rating scale in place but Mobley did not use it during the interviews to rank the applicants.  The way Mobley rates applicants in interviews is to have a list of answers to each of the standard questions prepared so that he can check off these answers if an applicant provides them in response to the questions.  Mobley admits that individual applicants may vary in the manner in which they handle certain areas, such as discipline, that are being asked about in his standard questions.

Mobley has the ultimate control to make the selection of who he will recommend for the vacant position.  Mobley has had no classes or continuing education training on employment discrimination or managing employees. He listens to what the Board members have to say about each applicant as they discuss their interview, but he is the one who makes the ultimate decision in

the recommendation. Mobley testified that the Board has "probably" accepted all of his recommendations regarding hiring selection decisions.

In his deposition, Mobley testified that he did not recommend Plaintiff for the position of Principal at CCHS because he felt that she was not the best applicant for the job.  Mobley recommended Dennis Magouirk and contends that Magouirk was the most qualified applicant  -- in large part -- because of his experience as an Assistant Principal at CCHS, where he had been in charge of discipline and overseeing extra-curricular activities.     Also, Magouirk had two years of successful experience as Principal of Pleasant Grove Elementary School.  Mobley also noted that Magouirk was also the Athletic Director at CCHS, which gave him experience supervising others, budgeting, and overseeing the maintenance of facilities and equipment. Further, Magouirk had public relations experience as a result of his athletic coaching duties.

These reasons asserted by Mobley during his deposition were not contained in Defendants' response to the EEOC.   In their response, Defendants stated that Mobley recommended Magouirk because of his experience as an Assistant Principal and as a Principal.   The job description

for Principal does not require prior experience as an Assistant Principal  or Principal.

Mobley testified that Plaintiff was not the most qualified applicant for the Principal position in part because she had little or no experience with direct supervision of students at a school and that he did not think her communication skills were as good as Magouirk's skills.  However, Mobley could not give an example of why he felt Plaintiff's communications skills were not as good as Magouirk's communication skills.  Plaintiff contends she has had extensive meetings with parents for individual education programs for their students and with regard to concerns and questions for the Alabama high school graduation exam, indicating that she has good communication skills.

Mobley also testified that he believed that Plaintiff had less leadership abilities than Magouirk  based upon a statement she made when he asked her to take the fixed assets inventory.  Mobley testified, and Plaintiff does not deny, that she told him that she would not take it because the employees would not cooperate with her and there was too much legality involved with fixed assets inventory.

Mobley did not discuss his perceived deficiencies of Plaintiff's qualifications with the other Board members during the interview process. The only discussion with Board members that Mobley can recall with regard to Plaintiff was that she had a good interview. Board President Rudy Robinson testified that the Board members discussed Plaintiff's advanced education degree and her years of experience as a special education teacher. The record does not contain any notes made by Mobley during the interview process.

The applicants interviewed for the principal's position consisted of one African-American female, one white female, one African-American male, and four white males. There was another white female, Diane Turley, who applied for the job, but she waived her interview because she had recently interviewed for another position.

The Board has a Uniform Code of Discipline, Student Code of Conduct Booklet that regulates what forms and methods of discipline can be used. An individual hired to be a Principal must comply with the rules of this policy with regard to discipline matters. Furthermore, the Cleburne County school system does not have a "huge" discipline problem; the students are "overall pretty well-behaved." Doc. 18, Vol. I, Exh. 2, pp. 265-66. The classroom

teachers are the first line for discipline of students and these teachers are allowed to use the discipline program in place. However, a principal must be involved in the discipline process if the offense warrants suspension from school. Mobley admits that a teacher with twenty-plus years experience in the classroom, such as Plaintiff, has experience in disciplining students.

During his deposition, Mobley did not recall what activities, committees or community projects Plaintiff listed on her resume with regard to her experience for public relations and supervising others.

In May 1998, at the time the decision was made to hire Magouirk as Principal of CCHS, Mobley had also hired three other males to be principals who had also previously been coaches. The white male holding the position of Principal at Ranburne High School had been a coach prior to being made principal. One of these prior coaches, Tim Smith, is no longer principal and has been returned as a physical education teacher and Assistant Principal with some coaching responsibilities. This action was due to problems he had with the discipline of the students at Fruithurst Elementary School. Smith was Principal for less than a year; he was replaced by another former coach, Scott Coefield.

Since January 1995, Plaintiff has been employed in her current position with her primary responsibility related to coordination of testing, but she also has responsibility for staff development, § 504 and ADA compliance, the LEP/ESL programs, Title IX Professional Development, and some special education duties.  Plaintiff was in her current administrative position when Mobley was elected Superintendent.  Even though her actual job title is Special Education/Federal Project Administrator, Mobley refers to her as the "Testing Coordinator," even though she has other duties.

After the decision was made to promote Magouirk to the Principal position at CCHS, during the 1999-2000 school year, Mobley testified that he had received a concern regarding Plaintiff's job performance regarding a Professional Development Day she had planned for the elementary teachers but not for the high school teachers.  These concerns came from some elementary teachers who begrudged the fact that they had to attend the Professional Day, while the high school teachers did not.  Mobley conceded that there always are concerns when there are changes and it always takes a couple of years to get any new changes exactly right.  Mobley has no documentation regarding these alleged concerns from the elementary

teachers and there is no evidence that this incident was considered during the selection process.

Mobley has never formerly reprimanded Plaintiff about her job performance.  He also testified that he makes a conference record if he goes to talk to an employee about a concern; Mobley does not have any conference records for Plaintiff.

Mobley testified that he has concerns with Plaintiff's work performance because he said she reads the Birmingham News "for hours at a time," and playing solitaire on her computer.  Doc. 16, Vol I, Exh. 2, pp. 196-98.  Mobley has also observed other employees read the newspaper and there is no written policy prohibiting reading the newspaper at work.  Mobley has never said anything to Plaintiff about her reading the newspaper at work or playing solitaire on her computer.

The parties agree that Plaintiff was qualified for the position of Principal of CCHS.

Presently, Mobley is Plaintiff's direct supervisor.  During the last three or four years, the State Board of Education has placed a greater emphasis on testing students.  The State Board considers the testing programs to be very important programs because the State Board uses the results of such tests

to determine whether a school is placed on academic alert and/or taken over by the State.

The State Board has also implemented a new exit exam that all students are required to pass before graduating from high school.  Further, the exit exam is now being given in the summer, in addition to being given during the school year.  Even though Plaintiff is only a nine-month employee and, thus, not working during the summer, she is in charge of overseeing the exit exams that are given in the summer; so, she must work during the summer.  Defendants refuse to extend Plaintiff's contract to a ten-month contract even though she is required to perform some of her duties during the summer break.  Other school systems employ their testing coordinators on ten-month to twelve-month employment contracts.  Plaintiff also claims she was denied compensation time for attending a professional development conference in Atlanta, Georgia.

Defendants have extended the contracts of employees who are not African-American and who have not filed discrimination lawsuits against them.

In April 2000, Plaintiff requested an extension of her contract from Mobley and the Board.  Mobley is aware that certain required tests from the

State will be administered in the summer break.  Plaintiff's request to extend her contract was denied.

Plaintiff has filed another lawsuit in this Court – *Harrington v. Cleburne County Board of Education*, CV 97-AK-1831-E.  In that case, Plaintiff also claims that Defendants retaliated against her by refusing to extend her contract to ten months or more.

Based upon an on site investigation and a review of all of the past promotion decisions, the EEOC issued a "For-Cause" finding on Plaintiff's charge.  When Mobley received the "For-Cause" finding on Plaintiff's charge of discrimination, he forwarded a copy of it to the Board members.  There were no meetings of the Board to discuss what should be done as a result of this "For-Cause" finding.  Mobley understands that the "For-Cause" determination meant that the EEOC had "reasonable cause to believe" that the Board had violated the law with regard to selection decisions.

Robinson has been the President of the Board for the past ten years and he has been a member of the Board for nineteen years.  Robinson and the other Board members were made aware that the EEOC had entered a "For-Cause" determination on Plaintiff's charge of discrimination.  He understood that the Board was facing liability as a result of this "For-Cause"

finding by the EEOC, but he did not instruct anyone to attempt to resolve this issue.  There were no meetings of the Board members to discuss the EEOC's determination.   The information regarding the finding by the EEOC was presented to the Board members by Mobley in an informal session after a formal board meeting; there was not a lot of discussion regarding the matter.

Robinson testified that he had received complaints in the past from female employees that they felt the Board discriminated in hiring practices. One female employee complained to Robinson about the "good old boy syndrome" in the hiring process.  Doc. 16, Vol. I, Exh. 3, p. 18.   Also, Robinson was aware of Plaintiff's prior discrimination lawsuits against the Board.   Robinson testified that he was aware that the Board has a duty to its employees to make sure that it complies with all discrimination laws.

Plaintiff has complained to Robinson about not receiving an extension of her contract to perform the work she is required to do during the summer. Robinson testified that he was aware that Plaintiff is forced to be on call during the summer to perform work even though it is her vacation time. When Plaintiff spoke with Robinson about extending her contract, she said she needed  the extension in order to have the time necessary to perform her job duties that were already assigned to her.  Robinson was also aware that

Plaintiff had requested eleven compensation days during the summer, but that Mobley had only approved nine days.

Plaintiff was promoted to her present position, according to Robinson, because of a threatened march by the Southern Christian Leadership Council. Robinson testified:

> Q. You were aware that Dr. Harrington was placed in her current position and at her current salary level in settlement of a potential lawsuit, potential discrimination claim?
>
> A. No, I think it was – are you talking about when she came from the high school?
>
> Q. Yes.
>
> A. That was – as it was relayed to us, the Board – from Robert Morton, who was superintendent at that time, it was – wasn't from a threat of a lawsuit.
>
> Q. Why was it done?
>
> A. It was because at the time the City of Heflin was trying to secure South Wire, and there was a threat made that they would march to try to railroad the South Wire deal from coming to Heflin.
>
> Q. Who is "they" that would march?
>
> A. I believe he said Rev. Nettles had approached him.
>
> Q. Who is Rev. Nettles?

> A.    From the Anniston area is all I know.   And I think maybe having some – maybe with the SCLC or something.   I really don't know for a fact.   Everything we got, we got from Robert Morton.

Doc. 16, Vol. I, Exh. 3, pp. 30-31.  Mobley was also aware of this alleged threat to march.                                               .

Plaintiff testified that Mobley has told her that he will not consider extending her contract unless she settled her "other stuff."   Mobley's demeanor in these conversations is one of "talking down" to Plaintiff.

Since filing her charge of discrimination in May of 1998 in this case, Plaintiff claims that Defendants have retaliated against her by denying to extend her contract from a period of nine months per year to ten months per year, which she contends would allow her to perform her duties of testing coordinator and her professional development duties.   Plaintiff also claims that Defendants have made it difficult for her to use compensation time for days she works during her summer vacation months or that they have refused to provide her such compensation time.   Because the State Department of Education is now requiring that some testing duties be performed during the summer months, Plaintiff has requested at the end of the last two school

years that her contract be extended so that she can perform these duties. Defendants have denied Plaintiff's requests.

Plaintiff was the Special Education teacher for approximately twenty years before she was made an administrator.  For approximately seventeen of her twenty years as a special education teacher, Plaintiff taught at CCHS. As a Special Education teacher, Plaintiff was responsible for teaching, supervising, and disciplining the students in her classes.  Plaintiff was also responsible for meeting with parents of the special education students and, in Plaintiff's opinion, these meetings required more communication skills and diplomacies than meeting with parents with normal students.  In addition, Plaintiff was responsible for coaching and taking special education students to the Special Olympic games and she was a sponsor of CCHS's Student Government Association.

Plaintiff reads the newspaper on a daily basis in order to obtain information that is relevant to education in the area of staff development and testing as part of her job duties.  During the 1997-1998 school year, Plaintiff never left the Central Office for lunch; she remained in her office during her lunch break.  Plaintiff admits that she occasionally played solitaire on her

computer during her lunch break.  However, she denies that she ever played solitaire instead of performing her job duties and responsibilities.

As a result of being denied an extension in her contract, Plaintiff has had some of her testing duties taken away from her by not being allowed to handle these duties during the summer months and during times in the year when she is off from work.  In Plaintiff's absence, these duties are handled by a twelve-month employee.

Prior to Mobley becoming Superintendent, Plaintiff had budget experience with regard to staff development, but now everything is pre-budgeted and she is told the amount she may spend over the year.  In addition, Plaintiff had experience for budgeting with Title II and Title IV programs, but these programs were taken from her after Mobley became Superintendent.

## III.    DISCUSSION

### A.    PROMOTION CLAIMS

Plaintiff alleges that Defendants failed or refused to promote her to the position of Principal of CCHS on the basis of her gender and her race, and in retaliation for prior EEOC charges and/or lawsuits.  (Doc. 1, ¶ 17).

Defendants claim that Plaintiff cannot show that the reasons offered for her non-selection to such positions was pretextual.

"A plaintiff may overcome the employer's asserted legitimate reasons and avoid judgment as a matter of law 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999)(*quoting Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*, cert. denied, sub nom., Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998)).

> A plaintiff, relying on evidence that the employer's proffered reasons are unworthy of credence as the basis for an inference of intentional discrimination, will obviously only succeed if there is sufficient evidence for a reasonable person to conclude that the employer's proffered reasons were not the basis for the employment decision. To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision.

*Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J., concurring). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Recently, the Eleventh Circuit has provided further instructions to the Court regarding the requirements for a showing of pretext in a failure to promote case:

> In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex. *See Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir.2000). We have explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997), *cert. denied, sub nom., Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999), *cert. denied*, [529 U.S. 1109], 120 S. Ct. 1962, 146 L. Ed. 2d 793 (2000) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful

discriminatory animus motivates a challenged employment decision."); *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir.1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position. . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.")

Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual. *See Alexander*, 207 F.3d at 1340; *see also Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir.1998), *cert. denied*, [528 U.S. 809], 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999)(" 'The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination' ") (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258-59, 101 S. Ct. 1089, 1096-97, 67 L. Ed. 2d 207 (1981)); *see also Taylor*, 175 F.3d at 868 (stating that evidence of plaintiff's superior experience "would permit a jury to disbelieve" that the employer actually relied on the chosen candidate's experience when it promoted him).

Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted. *See Fulton County*, 207 F.3d at 1340. In *Deines*, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280. The court explained that the phrase

> "jump off the page and slap [you] in the face" . . . should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

*Id*. at 280-81.

*Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000), *cert. denied* ____ U.S. ____, 121 S. Ct. 1486 (2001).

Defendants have articulated specific, nondiscriminatory reasons for not selecting Plaintiff for the position at issue in this case. Defendants contend that Dennis Magouirk was more qualified than Plaintiff because he had experience as Assistant Principal and Athletic Director at Cleburne County High School. These positions, they contend, gave him experience supervising teachers and students and overseeing school facilities. Plaintiff argues that Magouirk was not more qualified because, in part, Magouirk had an arguably unfavorable employment evaluation. Also, Plaintiff contends she was more qualified because she had a doctorate and had received "numerous awards for her teaching and leadership abilities." She also contends that her

many years of teaching special education gave her experience in disciplining students and developing relationships with parents and the community.

The Court has reviewed the record and found that Plaintiff's qualifications were not "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee*, 226 at 1254 (citation omitted).  Defendants selected a candidate with assistant principal experience.  Plaintiff does not have such experience.  Plaintiff's comparative qualifications are not sufficient to rebut Defendants' articulated reasons for their selection decisions.

Defendants' motion for summary judgment as to Plaintiff's claims based on her non-selection for Principal of CCHS is due to GRANTED and such claims are due to be DISMISSED WITH PREJUDICE.


### B.   RETALIATION - JOB CONDITIONS AND SALARY

Plaintiff's complaint alleges that Defendants retaliated against her by "reducing her administrative job duties and paying her a salary less than similarly situated white administrators . . . ."  However, the Court notes that Plaintiff's salary and the terms of her employment were determined prior to

her filing an EEOC charge in May 1998.   Indeed, Plaintiff contends that Defendants have failed to *change* her salary and terms of employment after she filed her EEOC charge in May 1998 and this lawsuit in September 2000.

Defendant contends that these claims are due to be dismissed as they are identical to claims pending in an earlier-filed case,  *Harrington v. Cleburne County Board of Education*, CV 97-AK-1831-E.  The Court agrees.  *See Id.*, Doc. 62 (Pretrial Order) at 3.  Therefore, Plaintiff's retaliation claims based on Defendants failure to change her salary and terms of employment are hereby DISMISSED WITHOUT PREJUDICE.  Plaintiff may seek all relief to which she may be entitled for any and all alleged retaliation in her earlier filed case, with the apparent consent of Defendants.  *See, e.g., Wu v. Thomas*, 863 F.2d 1543, 1548-49 (11th Cir. 1989).

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that Defendants' Motion for Summary Judgment (Doc. 13), as to all of Plaintiff's claims, is due to be granted.  The Court finds no existing disputed issue of material fact and that Defendants are entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendants on all claims of Plaintiff.

DONE this __16th__ day of May 2001.


H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE